IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION | * * * * * | |
| v. | * * | Civil No. CCB-13-1615 |
| SPOA, LLC | * * * | |

**MEMORANDUM**

The Equal Employment Opportunity Commission ("EEOC" or "Commission") brings this suit against defendant Spoa, LLC (d/b/a Basta Pasta) for alleged violations of Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991. The EEOC claims that owner Michael Sakellis sexually harassed former waitress Jane Doe,[1] former manager Dimitra Kokkinakos, and "similarly situated female employees."[2] (Compl., ECF No. 1 at 1.) A number of motions are now pending before the court including: plaintiff Doe's motion to intervene as of right; plaintiff Doe's motion to proceed under a pseudonym; and defendant Spoa's motion to dismiss and/or for more definite statement, opposition to permitting the case to proceed anonymously, and request for hearing. The court finds oral argument unnecessary to resolve the issues. *See* Local R. 105.6 (D. Md. 2011). For the reasons set forth below, the court will grant

---

[1] The parties currently use a pseudonym for the former waitress, but Spoa acknowledges that it knows Doe's true identity. (Mot. to Dismiss, ECF No. 8-1 at 13.) Doe is willing to appear under her legal name in open court, but moves to proceed under a pseudonym in the pleadings, motions, docket entries, and all written materials filed in this case. (Mot. to Proceed Under Pseudonym, ECF No. 7 at 1.)

[2] The EEOC seeks relief for the other "similarly situated female employees" as a class. In *Wal-Mart Stores, Inc. v. Dukes*, the Supreme Court explained that commonality requires the class members to have suffered the same injury, and not merely a violation of the same provision of law. 131 S. Ct. 2541, 2550–51 (2011) (citation omitted). I am not now deciding whether this lawsuit may proceed as a class action.

1

Doe's motion to intervene, grant Doe's motion to proceed under a pseudonym, deny Spoa's motion to dismiss, and grant in part and deny in part Spoa's motion for a more definite statement.

**BACKGROUND**

This suit alleges unlawful employment practices culminating in Doe's and other female workers' constructive discharges from the defendant's restaurant. According to the EEOC, since at least August 2006, Sakellis engaged in a pattern of unwanted and offensive sexual conduct toward female employees including: "[f]requent sexual touching;" "[f]requent sexual comments;" "[g]esturing to his shoulders, indicating he wanted a shoulder massage, or asking for a shoulder or hand massage;" "[s]taring at female employees' body parts . . . and giving sexual looks;" "[p]ushing alcoholic drinks on female employees at the conclusion of their shifts and acting offended if they did not stay and drink;" and on separate occasions, slipping date rape drugs into Mary Smith's[3] and Doe's beverages in an attempt to rape or sexually assault them. (ECF No. 1 ¶¶ 7a–h.) The EEOC also claims that, after Kokkinakos complained to restaurant management about Sakellis's behavior, Sakellis "warned [her] that she better keep her mouth shut" and then discharged her. (ECF No. 1 ¶¶ 8a–b.) Moreover, following Kokkinakos's attempt to aid Doe and her involvement in the EEOC investigation, Sakellis allegedly used an agent to "pressur[e] [Kokkinakos] to recant her testimony and threaten[] her with a defamation lawsuit." (ECF No. 1 ¶ 8c.)

Doe filed a formal charge (no. 531-2010-00592C) against the defendant on March 10, 2010. (ECF No. 8-5, Ex. D at 2, 4.) On April 29, 2010, the charge was assigned to Investigator

---

[3] Smith is another anonymous former employee of the defendant. The parties disagree on whether the EEOC should continue to use a pseudonym for Smith, and the defendant denies that it knows Smith's true identity. (ECF No. 8-1 at 6.) The EEOC is willing to disclose Smith's identity to the defendant, subject to a stipulated protective order. (ECF No. 16 at 18.)

2

Carol Glace in the EEOC's Baltimore Field Office. (Resp. to Mot. to Dismiss, ECF No. 16-1, Ex. 1 ¶ 4; ECF No. 16-2, Ex. 2 ¶¶ 2–4.) As part of her investigation, Investigator Glace prepared interview questions for Doe and other witnesses, interviewed Doe, Kokkinakos, and "several witnesses," requested and reviewed information submitted by Doe and Spoa, researched Spoa's corporate structure, discussed the case with her supervisor, and prepared a memorandum with her recommendation for the case. (ECF No. 16-2, Ex. 2 ¶ 5a.) Spoa, in a June 15, 2010, letter to Investigator Glace, denied each allegation in Doe's charge. (ECF No. 8-6, Ex. E at 2.) The June 15, 2010, letter also indicated that Spoa had developed a new employee handbook and expressed willingness to provide additional information if needed. (ECF No. 8-6, Ex. E at 3.) Apart from an acknowledgement that its June 15, 2010, letter was received, Spoa next heard from the EEOC on January 12, 2012, when Investigator Glace requested information relevant to Doe's charge. (ECF No. 8-7, Ex. F ¶¶ 3–4; ECF No. 8-8, Ex. G at 2–4.) Spoa responded to the request on January 31, 2012. (ECF No. 8-9, Ex. H at 2–3.) After Spoa responded to the request, on February 9, 2012, Investigator Glace interviewed Sakellis, John Skevoflex, and John Livaditis at Basta Pasta. (ECF No. 8-7, Ex. F ¶ 6.)

On December 17, 2012, Director Rosemarie Rhodes issued a Letter of Determination ("LOD"), finding that Doe and other female employees, as a class, faced a sexually hostile work environment at Basta Pasta, were subjected to unwelcome sexual harassment, and were constructively discharged. (ECF No. 16-2, Ex. 2, Attachment B at 13–14.) The class was comprised of female employees of Basta Pasta from June 2006 on. (*Id.* at 14.) The LOD also determined that Basta Pasta discharged an unnamed female manager in retaliation for her "several attempts to stop the sexual harassment." (*Id.*) Spoa maintains that this was the first time it heard of a retaliation claim by a second individual. (ECF No. 8-1 at 19.)

Also on December 17, 2012, Investigator Glace "issued an invitation to conciliate the [Title VII] violations." (ECF No. 16-2, Ex. 2 ¶ 5b; *see also* ECF 16-2, Ex. 2, Attachment B at 15–17.) Investigator Glace identified Kokkinakos as the manager against whom Basta Pasta retaliated. (ECF No. 16-2, Ex. 2, Attachment B at 15.) She also stated that the EEOC sought monetary and injunctive relief—in particular, $33,787 in back pay and $40,000 in compensatory damages for Doe, $29,983 in back pay and $30,000 in compensatory damages for Kokkinakos, $8,500 in attorneys' fees for Doe, and a $250,0000 claimant fund for other unnamed, aggrieved individuals. (ECF No. 16-2, Ex. 2 ¶ 5b; *see also* ECF 16-2, Ex. 2, Attachment B at 15.) According to Investigator Glace, claimants eligible for the fund were "all female employees who worked at [Basta Pasta] during the period of June 2006 through November 2012 and who the Commission determines were subjected to inappropriate comments and touching of a sexual nature during the course of their employment." (ECF No. 16-2, Ex. 2, Attachment B at 16.) Given the class of eligible claimants, Investigator Glace requested that Spoa provide the EEOC with "a current list of the names, social security numbers, last known home and cellular phone numbers, and last known address of each female employee . . . who worked at [Basta Pasta] during the period of June 2006 through November 2012." (*Id.*)

After requesting two extensions, Spoa responded to the EEOC's invitation to conciliate on January 11, 2013. (ECF No. 16-2, Ex. 2 ¶¶ 5c–d; ECF No. 16-2, Ex. 2, Attachment E at 24–29.) Spoa opposed—among other aspects of the conciliation proposal—the $250,0000 claimant fund, as it believed any claims not brought within three hundred days of the alleged unlawful conduct were barred by the statute of limitations found in § 706(e)(1). (ECF No. 16-2, Ex. 2,

Attachment E at 27.)[4] Investigator Glace replied in a February 6, 2013, letter, maintaining that conciliation should include the claimant fund. (ECF No. 16-2, Ex. 2, Attachment G at 34–35.) Despite further email and telephone communications between the parties, conciliation failed on February 27, 2013. (ECF No. 16-2, Ex. 2, Attachment K at 50.) On June 4, 2013, the EEOC filed the complaint in this case. As of September 13, 2013, Spoa had provided the Commission with only one list of employees who were active on July 31, 2009; it had not given the Commission the requested list of employees active from June 2006 to November 2012. (*See* Correspondence, ECF No. 18.)

## ANALYSIS

a.  **Motion to Intervene**

Doe asserts that she may intervene in the present case as of right. Pursuant to Rule 24, the court must permit a party to intervene as a plaintiff if the party "is given an unconditional

---

[4] It is unclear whether Spoa continues to assert this argument in its motion to dismiss. This argument, however, cannot stand. The EEOC cites *EEOC v. General Electric Co.* for the proposition that, if the Commission discovers new discrimination in the course of investigating a separate charge, the newly discovered discrimination may be the subject of an EEOC "reasonable cause" determination. 532 F.2d 359, 366 (4th Cir. 1976). Following the determination, the Commission must offer conciliation. *Id.* Here, the EEOC discovered the class claims in the course of investigating Doe's charge and included those claims in its December 17, 2012, LOD. The Commission then properly offered conciliation in regard to the class claims. Thus, the fact that the class claims were not brought within three hundred days of the alleged unlawful conduct is not determinative of whether the EEOC could pursue them. The court recognizes that Spoa relies on *EEOC v. Freeman*, No. RWT 09CV2573, 2010 WL 1728847 (D. Md. Apr. 27, 2010), but in that case, the Commission sought relief for individuals who allegedly suffered unlawful employment practices more than three hundred days *before* an aggrieved individual filed her formal charge; here, the Commission seeks relief for individuals who suffered alleged sexual harassment *after* Doe filed her formal charge. *Id.* at *4. *Cf. EEOC v. LA Weight Loss*, 509 F. Supp. 2d 527, 535–36 (D. Md. 2007) (refusing to apply the limitations period in § 2000e-5(e) to "EEOC pattern-or-practice claims"). Finally, the court notes that the Commission may seek damages in an enforcement action for individuals who did not file charges. *General Telephone Company of the Northwest, Inc. v. EEOC*, 446 U.S. 318, 331 (1980). Accordingly, even though the unnamed class claimants did not file charges with the EEOC, this does not prevent the Commission from now bringing suit on their behalf.

right to intervene by a federal statute." Fed. R. Civ. P. 24. Title VII of the Civil Rights Act of 1964 provides, in relevant part, that "the [EEOC] may bring a civil action against any respondent . . . named in the charge" and that "[t]he person or persons aggrieved shall have the right to intervene in a civil action brought by the Commission." 42 U.S.C. § 2000e-5(f)(1). Accordingly, so long as an aggrieved employee files a timely motion to intervene in the Commission's civil action, the "charging party has an unqualified right to intervene in the EEOC's action." *See Adams v. Proctor & Gamble Mfg. Co.*, 697 F.2d 582, 583 (4th Cir. 1983).

Here, Doe timely filed her motion to intervene as a plaintiff. The EEOC filed the current lawsuit on June 4, 2013, and Doe moved to intervene on July 22, 2013. She is an aggrieved former employee in this action; indeed, her complaint of sexual harassment forms the basis of the EEOC's suit against Spoa. (*See* ECF No. 1 at 3.) Finally, it does not appear that Spoa opposes Doe's attempt to intervene; rather, Spoa disagrees with her attempt to do so anonymously. Therefore, Doe may intervene as of right in the current action.

   **b. Motion to Proceed Under a Pseudonym**

Doe moves to proceed under a pseudonym, and the EEOC claims that Smith also should be permitted to proceed anonymously. Although there is a general presumption in favor of open court proceedings, the United States Court of Appeals for the Fourth Circuit has recognized that certain cases warrant the parties or witnesses proceeding anonymously. *See James v. Jacobson*, 6 F.3d 233, 242 (4th Cir. 1993); *see also* Fed. R. Civ. P. 10(a) (demonstrating the presumption of open-court proceedings by requiring a complaint to name all the parties). The trial court decides whether a plaintiff may proceed under a pseudonym on a discretionary, case-by-case basis. *See id.* at 238. Five non-exclusive factors guide the trial court's discretion:

> [1] whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a

matter of sensitive and highly personal nature; [2] whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties; [3] the ages of the persons whose privacy interests are sought to be protected; [4] whether the action is against a governmental or private party; and [5], relatedly, the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

*Id.* at 238–39 (citations omitted).

Most of the above factors weigh in favor of Doe remaining anonymous in the pleadings, motions, docket entries, and all written materials filed in this case; however, Doe shall appear under her legal name in open court. First, Doe seeks to preserve her privacy in a highly sensitive and personal matter involving sexual assault. The court therefore rejects Spoa's argument that sexual assault somehow involves less personal information than matters of abortion, homosexuality, and the welfare rights of illegitimate children or abandoned families. (ECF No. 8-1 at 9.) Second, ordering Doe to proceed under her legal name in court documents poses needless risk of mental harm. As Doe points out, "[i]n today's Internet age, the docket filings are likely to remain pervasively available." (ECF No. 7-1 at 2.) It is not simply that Doe may face embarrassment from this widespread disclosure, as Spoa argues, but rather she may face psychological harm from having this sensitive experience made permanently available to anyone with Internet access. Although Doe initially filed a charge with the EEOC in her own name, to the court's knowledge, the EEOC investigative record is not as widely available as documents filed in the federal judiciary's electronic filing system. Thus, the fact that Jane Doe was known by her legal name during the EEOC investigative process does not undermine her privacy interest in proceeding anonymously now. The third factor does not weigh in favor of Doe, as she was over the age of majority at the time of the alleged sexual assault. The fourth factor likewise does not weigh in favor of Doe because she is opposing a private party rather than a governmental entity. As to the final factor, most notably, allowing Doe to proceed under a

7

pseudonym in court documents will not prejudice Spoa's defense. Spoa knows who Doe is, which means it is fully capable of investigating and responding to her allegations. Moreover, because Doe will appear under her legal name in open court, there is no risk that the court's limited grant of anonymity would implicitly influence the jury should this case advance to trial. *See Jacobson*, 6 F.3d at 240–41. Accordingly, Doe must appear under her legal name in open court but will remain anonymous in the pleadings, motions, docket entries, and all written materials filed in this case.

Turning to whether the Commission may refer to Smith by a pseudonym, the court decides that she may remain anonymous in the pleadings, motions, docket entries, and all written materials filed in this case; however, the EEOC must reveal Smith's identity to Spoa. In addition, should Smith appear in court, she must do so under her legal name. As a preliminary matter, the court determines that the five *Jacobson* factors apply to the decision whether Smith may remain anonymous. *Jacobson* made clear that the five factors apply to witnesses and parties. 6 F.3d at 242. Notably, it does not appear that *Jacobson* is limited to *named* parties. Although not named parties, members of a class action are still parties to that action; their interests must be fairly and adequately represented, and they are bound by the class judgment. *See* Fed. R. Civ. P. 23 (a), (c)(2)(B)(vii). The EEOC intends to pursue this case on behalf of a class of female employees, and it indicates that Smith is part of the class. (*See* ECF No. 16 at 17.) The court therefore rejects the EEOC's argument that the *Jacobson* factors do not apply to Smith because she is not a named plaintiff in this action; to the extent she is part of the alleged class, she is a party and certainly a potential witness in this action.

Applying the first *Jacobson* factor, Smith is involved in a highly sensitive and personal matter involving sexual assault. As to the second factor, ordering Smith to proceed under her

legal name in court documents poses needless risk of mental harm. The third factor does not apply to Smith because she was above the age of majority at the time of the alleged sexual assault. The fourth factor also does not weigh in favor of Smith because the current proceeding is against a private party rather than a governmental entity. As to the final factor, Spoa's concern that it will be unable to investigate and respond to Smith's allegations is unwarranted. The EEOC will reveal Smith's identity to Spoa. Most of the factors weigh in favor of Smith having limited anonymity, and thus, her identity will be known to Spoa but remain concealed in pleadings, motions, docket entries, and all written materials filed in this case; additionally, if Smith appears in court, she must use her legal name.

The court does not find persuasive Spoa's assertion that, because other sexual assault cases did not proceed anonymously, neither should the current suit. As explained above, whether a party or witness may be known under a pseudonym is a case-by-case, fact-specific decision. The fact that the EEOC has, in other cases, identified alleged victims of sexual harassment is not dispositive of whether Doe and Smith must be identified here. Unlike other cases within the Fourth Circuit where the EEOC identified the victims of sexual harassment or assault, Doe and Smith are alleged victims of rape or attempted rape. *See, e.g.*, *EEOC v. Endoscopic Microsurgery Assocs., P.A.*, 273 F.R.D. 650, 650 (D. Md. 2011) (identifying claimants who faced "a sexually hostile and retaliatory work environment"). Furthermore, unlike other cases denying a motion to proceed under a pseudonym, this case involves only limited anonymity for Doe and Smith. *See, e.g.*, *Doe v. Frank*, 951 F.2d 320, 322–24 (11th Cir. 1992) (denying the plaintiff's motion to proceed under a pseudonym when the plaintiff seemed unwilling to appear in court under his legal name). The court in *EEOC v. ABM Industries Inc.* approved a similar limited anonymity; the court reasoned that the plaintiffs' offer to stipulate to

9

protective orders provided the defendants with an opportunity for meaningful discovery. 249 F.R.D. 588, 594–95 (E.D. Ca. 2008). In short, Doe and Smith initially may proceed under pseudonyms in the pleadings, motions, docket entries, and all written materials filed in this case. Their identities are or must be made known to the defendant, however, and the court will revisit this issue if any prejudice to the defendant is shown at a later time.

### c. Motion to Dismiss

Spoa argues that the EEOC fails to satisfy the Rule 12(b)(6) threshold and that the EEOC does not state a Title VII claim upon which relief may be granted. When ruling on a motion under Rule 12(b)(6), the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). "The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and alterations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim . . . . However, the complaint must allege sufficient

facts to establish those elements." *Walters*, 684 F.3d at 439 (quotations and citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

Title VII of the Civil Rights Act of 1964 prohibits discrimination by an employer against any individual with respect to terms, conditions, or privileges of employment because of that individual's sex. 42 U.S.C. § 2000e-2(a)(1). Courts have long endorsed and adopted the EEOC's interpretation that sexual harassment is a form of prohibited sex discrimination. *See Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65–66 (1986). Actionable workplace sexual harassment claims include claims of a hostile work environment due to severe or pervasive sexual harassment. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 753–54 (1998); *Pitter v. Cmty. Imaging Partners, Inc.*, 735 F. Supp. 2d 379, 390 (D. Md. 2010). To prove a claim for hostile work environment due to sexual harassment, the plaintiff must show that: (1) she was harassed because of her sex; (2) the harassment was unwanted; (3) the harassment was so severe as to create an abusive work environment; and (4) there is some basis for holding the employer liable. *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 241 (4th Cir. 2000) (citation omitted).

Spoa argues that the EEOC fails to meet the Rule 12(b)(6) hurdle because it does not provide the legal names for the two anonymous claimants, Doe and Smith. This argument cannot stand. The EEOC sets forth detailed facts showing unwelcome, severe, and pervasive conduct, for which Spoa may be held accountable. For instance, in the complaint, the EEOC states that Sakellis frequently touched female employees' rear ends and lower backs and rubbed his genitals into female employees' rear ends. (ECF No. 1 ¶ 7a.) According to the EEOC, Sakellis also pulled a female employee's bra strap and placed a female employee in a headlock.

11

(ECF No. 1 ¶ 7a.) The complaint also alleges that Sakellis made frequent and unwanted sexual comments, telling female employees they looked sexy or hot and stating "look at that ass" and "Oh, the things I want to do to you." (ECF No. 1 ¶ 7b.) It further alleges that Sakellis requested physical touching from female employees and pushed alcohol and drugs on female employees to induce sex. (ECF No. 1 ¶ 7c, 7e–h.) Accepting these allegations as true, the court determines that the EEOC provides sufficient facts to state a claim for relief.[5]

Similarly, Spoa argues that the EEOC's suit must be dismissed under Rule 12(b)(1) because the EEOC failed to conciliate Doe's, Kokkinakos's, or Smith's claims. Under Title VII, the Commission has a duty to conciliate before filing suit. *See* 42 U.S.C. § 2000e-5(b); *see also EEOC v. Radiator Specialty Co.*, 610 F.2d 178, 183 (4th Cir. 1979) (citation omitted) ("Attempted conciliation is a condition to the Commission's power to sue."); *Patterson v. American Tobacco Co.*, 535 F.2d 257, 272 (4th Cir. 1976) ("[A] suit brought by the commission before attempting conciliation is premature."). Indeed, if the EEOC does not conciliate before filing suit, the court may be divested of jurisdiction to hear the case. *See EEOC v. American Nat'l Bank*, 652 F.2d 1176, 1185 (4th Cir. 1981) ("Proper investigation and conciliation of charges are characterized as jurisdictional prerequisites to a suit by the EEOC on a particular claim."); *see also EEOC v. Lockheed Martin Global Telecommunications, Inc.*, 514 F. Supp. 2d 797, 806 (D. Md. 2007) (citation omitted).[6] The court determines whether the EEOC satisfied

---

[5] Spoa also claims, in its reply memorandum, that the EEOC's complaint is inadequate under Rule 12(b)(6) because it "does not provide any notice whatsoever as to the names of the individual group or 'class' members for whom damages are sought, or even the size of the putative group or 'class.'" (ECF No. 17 at 11.) Because Spoa did not raise this issue in its original brief, the court declines to consider it. *See United States v. Williams*, 445 F.3d 724, 736 n.6 (4th Cir. 2006).

[6] The parties disagree over whether the conciliation requirement should be characterized as "jurisdictional" or a "condition precedent." Even if the requirement is a condition precedent, and not jurisdictional, the EEOC satisfied its duty to conciliate.

the duty to conciliate under the deferential good faith standard. *See Radiator Specialty Co.*, 610 F.2d at 183; *see also Lockheed Martin Global Telecommunications, Inc.*, 514 F. Supp. 2d at 806 ("The fundamental question is whether the EEOC's conduct was reasonable and responsive under all the circumstances.").

The court finds Spoa's assertion that the EEOC did not satisfy its duty to conciliate in good faith with respect to Doe and Kokkinakos unconvincing. Investigator Glace's invitation to conciliation discussed potential relief for both women and requested a response from Spoa. (ECF No. 16-2, Ex. 2, Attachment B at 17.) Spoa responded by writing two formal letters and engaging in telephone and email communications with Investigator Glace. (*See* ECF No. 8-12, Ex. K; ECF No. 8-14, Ex. M.) In those communications, Spoa dealt with the monetary and injunctive relief requested for both Doe and Kokkinakos. Responding to the first letter from Spoa, Investigator Glace again indicated that Spoa should provide a counteroffer for compensatory damages, if it disputed the amount requested. (ECF No. 8-13, Ex. L at 2.) Spoa even admits, in its memorandum, that the EEOC invited Spoa to provide a counterproposal. (ECF No. 8-1 at 31.) This back-and-forth between the EEOC and Spoa supports that the EEOC responded to Spoa's concerns regarding the relief requested and acted reasonably under the circumstances.

The circumstances are somewhat different as to Smith. The EEOC attempts to obtain relief for Smith based on the argument that she is a member of the class of female employees at Basta Pasta and that the Commission engaged in conciliation efforts for this class of women. The EEOC correctly cites a number of cases for the notion that the Commission need not identify each member or potential member of a class and conciliate with respect to each individual to file suit on behalf of the class. *See, e.g.*, *Lockheed Martin Global Telecommunications, Inc.*, 514 F.

13

Supp. 2d at 806–07; *EEOC v. PBM Graphics, Inc.*, 877 F. Supp. 2d 334, 360–62 (M.D.N.C. 2012). Thus, to the extent that the EEOC seeks relief for Smith as a member of the alleged class, Spoa's motion to dismiss under Rule 12(b)(1) will be denied.

As to Spoa's argument that the current suit is barred by the equitable doctrine of laches, the court determines that the EEOC did not lack diligence in pursuing its claims and filing suit against Spoa. Laches may be raised as a defense to a Title VII action brought by the EEOC. *EEOC v. Peterson, Howell & Heather, Inc.*, 702 F. Supp. 1213, 1220 (D. Md. 1989) (citations omitted); *see also Occidental Life Ins. Co. of Cal. v. EEOC*, 432 U.S. 355, 373 (1977) (explaining that, in cases where there is "inordinate EEOC delay in filing the action after exhausting . . . conciliation[,] . . . the federal courts do not lack the power to provide relief"). The defendant must prove (1) the plaintiff lacked diligence in pursuing her claim and (2) the defendant suffered resulting prejudice. *EEOC v. Navy Federal Credit Union*, 424 F.3d 397, 409 (4th Cir. 2005). The plaintiff lacked diligence if her delay in filing suit was inexcusable or unreasonable. *Lockheed Martin Global Telecommunications, Inc.*, 514 F. Supp. 2d at 801 (citing *White v. Daniel*, 909 F.2d 99, 102 (4th Cir. 1990)). No particular period of delay is *per se* inexcusable or unreasonable. *Id.*; *see also EEOC v. Worthington, Moore & Jacobs*, 582 F. Supp. 2d 731, 735 (D. Md. 2008).

As a preliminary matter, the parties disagree on the relevant time period for determining whether the EEOC delayed in pursuing its claims against Spoa. The EEOC claims that the relevant time period is the period between when conciliation ended and when the EEOC filed suit. By contrast, Spoa contends that the court must consider the time period between when Doe filed her charge and when the EEOC filed suit, or the period from March 10, 2010, to June 4, 2013. Spoa focuses in particular on the EEOC's investigation, claiming that the EEOC delayed

14

unreasonably in requesting information from Spoa, beginning the investigation, and issuing the LOD.  Because the court finds at no point did the EEOC lack diligence in pursuing the claims against Spoa, it is not necessary to decide the relevant time period for a laches analysis.

Regarding the EEOC's investigation, Doe filed a formal charge on March 10, 2010, and the LOD issued on December 17, 2012.  Investigator Glace's case log reveals she began her investigation promptly after the case was assigned to her.  (ECF No. 16-1, Ex. 1, Attachment A at 9.)  After receiving her assignment, Investigator Glace communicated with Doe and counsel for Spoa, prepared to interview and did in fact interview Doe, Kokkinakos, and other witnesses, requested and reviewed information submitted by Doe and Spoa, researched Spoa's corporate structure, discussed the case with her supervisor, and prepared a memorandum with her recommendation for the case.  Notably, the case log does not reflect all of these activities, which were productive toward the LOD and the Commission's finding of sexual harassment.  (ECF No. 16-2, Ex. 2 ¶ 5a.)  In contrast to the approximately thirty-three-month period at issue in this case, in cases of unreasonable delay by the EEOC, there was inactivity for a period of five years or more between the filing of the initial complaint and the beginning of the lawsuit.  *See, e.g.*, *EEOC v. Bethlehem Steel Corp.*, 765 F.2d 427, 428–31 (4th Cir. 1985) (five-year delay); *Henderson v. Anne Arundel Cnty. Bd. of Educ.*, 54 F. Supp. 2d 481, 482 (D. Md. 1998) (twenty-year delay).  Spoa relies on *Peterson, Howell & Heather, Inc.* to claim that the shorter period here was still unreasonable, but reliance on this case is not appropriate.  Although the court in *Peterson, Howell & Heather, Inc.* found a thirty-six-month delay between the filing of the Commission's charge and the completion of the investigation unreasonable, the court focused on how the final investigative report "was substantially the same as the draft investigative report completed fifteen months earlier."  *See* 702 F. Supp. at 1221.  Thus, unlike in the present case,

15

the EEOC's investigation in *Peterson, Howell & Heather, Inc.* made little progress toward the final determination in that case; it led only to "a complaint couched in very general terms which totalled a little more than three pages." *Id.* Accordingly, given the extent of Investigator Glace's activities, and the progress she made toward the LOD, the court does not find the length of her investigation unreasonable, and it need not consider whether Spoa suffered prejudice from the delay.

Turning to the period of attempted conciliation, Investigator Glace issued an invitation to conciliate on December 17, 2012, and conciliation failed on February 27, 2013. This approximately two-month period is reasonable in light of the requirement that the EEOC must attempt conciliation for at least thirty days. *See* 42 U.S.C. § 2000e-5(f)(1); *see also EEOC v. LJAX, Inc.*, 442 F. Supp. 2d 267, 268 (D. Md. 2006) (citations omitted). Furthermore, even if there was a slight delay in pursuing conciliation, part of the delay may be attributed to Spoa's request for two extensions before responding to the EEOC's invitation to conciliate. The court, having found the period for conciliation to be reasonable, does not need to address whether Spoa suffered resulting prejudice.

As to the period between conciliation and the beginning of the lawsuit, conciliation failed on February 27, 2013, and the EEOC filed suit on June 4, 2013. The court finds this three-month period was reasonable for the EEOC to make a litigation decision and to file suit against Spoa. *Cf. Lockheed Martin Global Telecommunications, Inc.*, 514 F. Supp. 2d at 802–03 (deeming the thirty-month period between the end of conciliation and the filing of suit unreasonable delay). Having determined the EEOC did not lack diligence in filing suit, it is unnecessary to consider whether Spoa suffered prejudice from the three-month delay. Spoa's laches defense must fail.

### d. Motion for a More Definite Statement

Spoa maintains that, even if the EEOC's suit satisfies the Rule 12(b)(6) requirements, the complaint "is simply too vague and ambiguous for Defendant to respond to it." (ECF No. 8-1 at 6.) In particular, Spoa argues that "[w]ith regard to 'Mary Smith,' there is no way whatsoever for Defendant to know who, among its some 120 female ex-employee restaurant workers she is, so it is impossible for Defendant to investigate . . . or make any response to" her allegations. (ECF No. 8-1 at 6.)

Rule 8(a)(2) requires the claimant to make "a short and plain statement of the claim showing that [she] is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Rule 12(e), "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). A motion for a more definite statement is therefore "designed to strike at unintelligibility rather than simple want of detail." *Frederick v. Koziol*, 727 F. Supp. 1019, 1021 (E.D. Va. 1990) (citation and internal quotation marks omitted).

Applying the above standard, Spoa's motion for a more definite statement will be granted in part and denied in part. Because Spoa admits knowing Doe's identity, it cannot maintain that it is unable to respond to her claims. Accordingly, to the extent Spoa requests a more definite statement in regard to Doe's allegations, Spoa's motion will be denied. Spoa is correct, however, that it cannot investigate and respond to Smith's claims without knowing her identity. Thus, subject to the conditions outlined above, the EEOC must reveal Smith's identity to Spoa; to that extent, Spoa's motion for a more definite statement will be granted.

## CONCLUSION

For the reasons set forth above, the court will grant Doe's motion to intervene, grant Doe's motion to proceed under a pseudonym, deny Spoa's motion to dismiss, and grant in part and deny in part Spoa's motion for a more definite statement. A separate order follows.

  October 15, 2013                                                      /s/
Date                                                          Catherine C. Blake
                                                              United States District Judge